Honorable Dotty Doll Representative, District 29 5400 Rockhill Road Kansas City, Missouri 64110
Dear Representative Doll:
You have requested an official opinion of this office on the following question:
 "Does Missouri's Safety Glazing Act, 701.010
et seq. RSMo apply to `jalousie' doors and is Missouri pre-empted from enforcing this law as to `jalousie' doors by reason of conflicting Federal regulations?"
The Missouri law to which you refer and which became effective on January 1, 1977, states in material part:
 "It is unlawful for any person, firm, or corporation to sell or offer to sell for use in this state any sliding glass doors, including both fixed and closed panels, storm doors, shower doors, bathtub enclosures, interior and exterior framed or unframed glass entrance or exit doors made of material other than safety glazing material. . ." § 701.015.3, RSMo Supp. 1976.
Safety glazing material is that ". . . which is so constructed, treated or combined with other materials as to minimize the likelihood of cutting and piercing injuries resulting from human contact with the glazing material." § 701.010(2).
Violation of the law is declared a misdemeanor. § 701.020.
The law does not assign responsibility for its enforcement to any particular state agency nor provide for the adoption of implementing rules and regulations.
It would seem that a jalousie door is included within the broad descriptive language "interior and exterior framed or unframed glass entrance or exit doors" and is thus subject to the Missouri law. The Consumer Product Safety Act,15 U.S.C.A. §§ 2051, et seq. (1972) contains these provisions:
"(a) The Congress finds that —
* * *
 (4) control by State and local governments of unreasonable risks of injury associated with consumer products is inadequate and may be burdensome to manufacturers;
* * *
 (6) regulation of consumer products the distribution or use of which affects interstate or foreign commerce is necessary to carry out this chapter.
* * *
"(b) The purposes of this chapter are —
* * *
 (3) to develop uniform safety standards for consumer products and to minimize conflicting State and local regulations; . . ." 15 U.S.C.A. § 2051.
 "(a). . . (1) The term `consumer product' means any article, or component part thereof, produced or distributed (i) for sale to a consumer for use in or around a permanent or temporary household or residence, a school, in recreation, or otherwise, or (ii) for the personal use, consumption or enjoyment of a consumer in or around a permanent or temporary household or residence, a school, in recreation, or otherwise; . . ." 15 U.S.C.A. § 2052.
 "(a) The [Consumer Product Safety] Commission may by rule, . . . promulgate consumer product safety standards. . . ."; 15 U.S.C.A. § 2056.
"(a) It shall be unlawful for any person to —
 (1) manufacture for sale, offer for sale, distribute in commerce, or import into the United States any consumer product which is not in conformity with an applicable consumer product safety standard under this chapter;" 15 U.S.C.A. § 2068.
 "(a) Whenever a consumer product safety standard under this chapter is in effect and applies to a risk of injury associated with a consumer product, no State or political subdivision of a State shall have any authority either to establish or to continue in effect any provision of a safety standard or regulation which prescribes any requirements as to the performance, composition, contents, design, finish, construction, packaging, or labeling of such product which are designed to deal with the same risk of injury associated with such consumer product, unless such requirements are identical to the requirements of the Federal standard." 15 U.S.C.A. § 2075.
The Consumer Product Safety Commission has adopted a standard for glazing materials manufactured after July 6, 1977.16 C.F.R., Part 1201. The safety requirements imposed by this standard relate to glazing materials in:
(1) Storm doors or combination doors.
(2) Doors.
(3) Bathtub doors and enclosures.
(4) Shower doors and enclosures.
(5) Glazed panels.
(6) Sliding glass doors (patio-type).
The standard specifically exempts, among other things, the operating vents or louvers of jalousie doors from its requirements.16 C.F.R. § 1201.1.
The reasons given by the Commission for this exemption appear to be that the increased cost of the product would not be justified by the safety benefit to the consuming public resulting from imposition of the requirements of the standard. 42 FederalRegister 1431 (January 6, 1977). The Commission also expressed the view "that the preemption provisions of the Consumer Product Safety Act [15 U.S.C.A. § 2075(a)] would not apply to those products exempted from the scope of this standard by § 1201.1(c)."42 Federal Register 1440.
Because of the Consumer Product Safety Commission's position that there is no Federal preemption of state regulation of consumer products that it has exempted from its glazing materials safety standard, it is our view that the safety requirements of §§701.010-701.020, RSMo Supp. 1976 are in force and effect as to glazing materials in jalousie doors sold or offered for sale in this state after January 1, 1977.
Very truly yours,
 JOHN ASHCROFT Attorney General